IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | No. 19-403 |
| v. | : | |
| | : | CIVIL ACTION |
| JAMES STROHM | : | No. 22-474 |

MCHUGH, J.                                                                                                    May 25, 2023

**MEMORANDUM**

Defendant James Strohm pleaded guilty to possession and distribution of child pornography and received a sentence in the middle of the applicable Guidelines. He now moves for relief pursuant to 28 U.S.C. § 2255. For the reasons that follow, his motion will be denied.[1]

**I.    BACKGROUND**

In the Spring of 2019, federal law enforcement was advised of online activity suggesting that child pornography was being posted and exchanged. An investigation followed, and ultimately a total of more than 7,800 files containing child pornography were found on multiple devices under the control of the Defendant. The files consisted of 346 image files and 100 video files, depicting mainly pre-pubescent children being sexually abused and assaulted by adult men, engaging in sex acts with other children, and lasciviously exposing their genitals, and also infants and toddlers being raped, in obvious pain, and in bondage. A forensic review of the personal laptop computer revealed additional images depicting child pornography. At the time, Mr. Strohm

---

[1] The decision whether to hold an evidentiary hearing on a § 2255 motion lies within the discretion of the district court. *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005); *Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989); *United States v. Creamer*, 2012 WL 3641351 (E.D.P.A. August 24, 2012). No hearing is necessary if the motion, the files, and the records of the case conclusively show that the prisoner is not entitled to relief. 28 U.S.C. § 2255(b); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301-02 (3d Cir. 1991); *United States v. Nino*, 878 F.2d 101, 103 (3d Cir. 1989). Such is the case here.

was employed as a Philadelphia police officer in its Accident Investigation Division, and some of the devices storing the images were kept at his workplace.

After being confronted by law enforcement, Mr. Strohm retained well-respected, highly experienced counsel, and ultimately entered into a guilty plea agreement.

### A. The Guilty Plea Hearing

On July 24, 2019, the Defendant appeared and pleaded guilty to an information pursuant to a written plea agreement charging him with one count of distribution and attempted distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2), (b)(1) and one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2).

At the outset of the hearing, the Court inquired into the Defendant's mental health and substance abuse history. The Defendant denied any treatment for psychological conditions or mental illness, denied ever receiving treatment for drugs or alcohol, and stated that he was feeling physically and mentally well enough to proceed with the plea hearing. *See* Guilty Plea Tr. at 6. The Defendant further acknowledged that he had reviewed the guilty plea agreement with counsel, that he voluntarily signed the plea agreement, and that he was satisfied with counsel. *Id.* at 7.

Before accepting his plea of guilty, the provisions of the plea agreement were reviewed with the Defendant on the record. The Defendant was advised of the specific charges to which he was pleading guilty. Guilty Plea Tr. at 9. Various stipulations were also reviewed on the record, including the following:

- the base offense level for the Defendant's crimes was twenty-two;
- the offense involved a child under the age of twelve, which resulted in a two-level enhancement;
- the Defendant knowingly engaged in distribution, elevating his offense by two

- points;

- the offense involved sadistic conduct and sex abuse of a child, increasing the offense by four points;

- the Defendant used a computer to commit the offense, increasing the offense by two levels; and

- the crime involved over 600 images, elevating the offense by five points. *Id.* at 11-12.

The parties stipulated that the Defendant would receive a three-point reduction for acceptance of responsibility. *Id.* at 12. Mr. Strohm was then advised that he was facing a maximum of 20 years of imprisonment on each count, a mandatory minimum term of 5 years of incarceration, a five-year term up to a lifetime of supervised release, a $500,000 fine, and a $200 special assessment. Guilty Plea Tr. at 15-16. The Defendant acknowledged that he understood the penalties he faced as a result of his guilty plea. Guilty Plea Tr. at 16.

The elements of the charges were then reviewed with the Defendant. *Id.* at 25-26. He represented that he had reviewed the factual basis set forth in the Government's change of plea memorandum and that these facts were accurate. *Id.* at 28. Most importantly, Mr. Strohm affirmed that he was pleading guilty because he was, in fact, guilty. *Id.*

The Court discussed the significance of the Sentencing Guidelines and the 3553(a) factors. Guilty Plea Tr. at 16-17. Mr. Strohm was cautioned that no one could guarantee what sentence the Court might impose at the time of sentencing, and that if the sentence was more severe than the Defendant expected, he would not be able to withdraw his guilty plea. *Id.*

The Court enumerated the rights the Defendant was giving up by deciding to plead guilty. *Id.* at 21-25. It also reviewed the appellate waiver in the plea agreement, which states:

> In exchange for the promises made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law.  As part of this knowing and voluntary waiver of the right to appeal or collaterally attack the conviction and sentence, the defendant expressly waives the right to raise on appeal or on collateral review any argument that (1) the statutes to which the defendant is pleading guilty are unconstitutional and (2) the admitted conduct does not fall within the scope of the statutes.
>
> a. Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of his sentence.
>
> b. If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal or petition for collateral relief but may raise only a claim, if otherwise permitted by law in such a proceeding:
>
>    (1) that the defendant's sentence on any count of conviction exceeds the statutory maximum for that count as set forth in paragraph three above;
>
>    (2) challenging a decision by the sentencing judge to impose an "upward departure" pursuant to the Sentencing Guidelines;
>
>    (3) challenging a decision by the sentencing judge to impose an "upward variance" above the final Sentencing Guideline range determined by the Court; and
>
>    (4) that an attorney who represented the defendant during the course of this criminal case provided constitutionally ineffective assistance of counsel.
>
> If the defendant does appeal or seek collateral relief pursuant to this subparagraph, no issue may be presented by the defendant in such a proceeding other than those described in this subparagraph.

Guilty Plea Agreement, ECF 15 at 10-11.  Following this lengthy colloquy, the Defendant's guilty plea was accepted as having been knowingly, intelligently, and voluntarily entered.  Guilty Plea Tr. at 28-29.

### B. The Sentencing Hearing

On January 6, 2021, the sentence was imposed. Before sentencing, defense counsel had arranged for Defendant to undergo a psychological evaluation and submitted a report to the Court. In response, the Government obtained an expert through the Bureau of Prisons ("BOP"). That expert found evidence of the Defendant malingering on objective testing. The BOP expert further opined that the Defendant's persistent denial that he was sexually aroused by children was unsupported by his multiple admissions that he masturbated to these images.

The Court found without objection that the applicable Guidelines range was 151 to 188 months of incarceration, which was consistent with the stipulations set forth in the guilty plea agreement and the pre-sentence report. After extensive oral argument, I imposed a sentence of 172 months of incarceration, followed by twenty years of supervised release, a $200 special assessment, $79,000 in agreed-upon restitution to his victims, a $17,000 AVAA special assessment, and a $10,000 assessment under the JVTA. The Defendant was advised that if he wished to appeal the sentence, he was required to do so within fourteen days of the sentencing hearing, in writing, *see* Sent. Hearing Tr. at 65, and represented that he had no questions regarding his rights. *Id*.

### C. Defendant's Direct Appeal

Almost five weeks after the imposition of his sentence, notwithstanding his appellate waiver, Mr. Strohm filed an untimely notice of appeal, ECF 44,[2] in response to which the Government filed a motion for summary affirmance of the district court in the circuit court. On May 4, 2021, the Third Circuit ordered counsel for appellant to file a response to the Government's

---

[2] On March 2, 2022, the Defendant, through counsel, filed a motion for an extension of time to file a notice of appeal. ECF 48. The Government opposed the Defendant's motion, and on March 5, 2021, I denied Defendant's request for an extension of time to file a notice of appeal. ECF 55.

motion. Following a review, defense counsel filed a motion to withdraw because the limited circumstances outlined in the plea agreement permitting an appeal had not occurred, and there were no non-frivolous claims to pursue. Appellant was then given an opportunity to respond *pro se* to the Government's motion. Rather than proceed, Mr. Strohm filed a *pro se* motion to dismiss the appeal, which the Third Circuit granted on January 11, 2022, under Fed. R. App. P. 42(b).

### D. Defendant's Motion Under 28 U.S.C. § 2255

This *pro se* petition followed. ECF 60. It spans approximately 500 pages, hand-written, and asserts nineteen claims, as follows:

1. Counsel was ineffective for failing to timely file a notice of appeal (Claim 1);

2. Counsel was ineffective for failing to investigate impeachment, exculpatory, and mitigating evidence, failing to investigate the case, failing to realize there was a defect in the charging document, and failing to move to dismiss (Claims 2, 3, 6, 11, and 15);

3. Counsel was ineffective for failing to discover violations of the Defendant's First, Fourth, Fifth Amendment, and Fourteenth Amendment rights and for failing to file a motion to suppress because the search warrant lacked probable cause (Claims 4, 8, 9, and 12);

4. Counsel was ineffective for failing to make a motion to produce witness statements (Claim 7);

5. Counsel was ineffective for failing to file a *Daubert* motion (Claim 10);

6. Counsel was ineffective for failing to file a Rule 29 motion (Claim 14); and

7. Counsel was ineffective during sentencing (Claims 16, 17, 19).

The Defendant also argues that his sentence should be vacated based on alleged prosecutorial misconduct, violations of criminal procedure, and *Brady* violations (Claim 5), and because the

sentence was illegal (Claim 18).

## II. DISCUSSION

### A. Claims 5 and 18 Are Both Procedurally Defaulted and Barred by the Defendant's Plea Agreement.

#### 1. *Claims 5 and 18 Are Procedurally Defaulted*

In Claim 5, the Defendant alleges prosecutorial misconduct, violations of criminal procedure and the rules of evidence, and *Brady* violations. In Claim 18, the Defendant argues that the sentence imposed was illegal. Because the Defendant did not present these issues on direct appeal, they are procedurally defaulted and should be dismissed.

A claim may not be raised under Section 2255 if there was a full opportunity for the petitioner to be heard during the trial phase and on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). Not only may a Section 2255 motion "not do service for an appeal," but the Supreme Court has recognized "the well-settled principle that to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 165-66 (1982).

Two exceptions exist: "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal citations omitted). Neither exception applies here, with the result that the default stands, and Claims 5 and 18 are barred.

#### 2. *Separately, Claims 5 and 18 Are Barred by the Defendant's Guilty Plea Agreement*

Even if these claims were not procedurally defaulted, Claims 5 and 18 are barred by the Defendant's guilty plea agreement, which limits his right to collaterally attack his conviction and

7

sentence.

The Third Circuit has explained that there are

> three elements to be considered when the government invokes an appellate waiver and the defendant contends that the waiver does not bar [his] appeal: (1) whether the waiver of the right to appeal [his] sentence was knowing and voluntary; (2) whether one of the specific exceptions set forth in the agreement prevents the enforcement of the waiver; *i.e.*, what is the scope of the waiver and does it bar appellate review of the issue pressed by the defendant; and (3) whether enforcing the waiver would work a miscarriage of justice.

*United States v. Goodson*, 544 F.3d 529, 536 (3d Cir. 2008) (internal quotation marks omitted). There is no basis on which to avoid the appellate waiver here. The guilty plea hearing makes plain that the plea was knowing and voluntary. None of the exceptions in the agreement apply. *See* Plea Agreement ¶ 10. And there was no "miscarriage of justice." *See United States v. Khattak*, 273 F.3d 557, 562 (3d Cir. 2001). The "miscarriage of justice" exception "will be applied sparingly and without undue generosity." *United States v. Wilson*, 429 F.3d 455, 458 (3d Cir. 2005). It requires extraordinary circumstances hardly present here, such as where the government has breached its promises, *United States v. Schwartz*, 511 F.3d 403, 405 (3d Cir. 2008), or the defendant did not understand the plea agreement itself due to ineffective assistance of counsel. *United States v. Shedrick*, 493 F.3d 292, 298 (3d Cir. 2007).

**B.      Defense Counsel Was Not Ineffective.**

In the remainder of his motion, the Defendant alleges that his attorney was constitutionally ineffective. All seventeen of the ineffective assistance of counsel claims lack merit when evaluated under the demanding standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).The Supreme Court in *Strickland* set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not

> functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

The appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. Accordingly, a defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. There is a strong presumption that counsel has rendered adequate assistance and that all significant decisions were made in the exercise of reasonable professional judgment. *Id*. at 689; *see also Buehl v. Vaughn*, 166 F.3d 163, 169 (3d Cir. 1999); *Reese v. Fulcomer*, 946 F.2d 247, 256-57 (3d Cir. 1991), *cert. denied*, 503 U.S. 988 (1992). The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

Under *Strickland,* even if a defendant establishes deficient representation, he must also satisfy the second part of the test, by showing that counsel's unprofessional errors actually prejudiced the defendant. *Strickland,* 466 U.S. at 687. This requires that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694; *Deputy v. Taylor*, 19 F.3d 1485, 1493

9

(3d Cir. 1994).  In the context of a guilty plea, this requires the defendant to prove that there is a "reasonable probability that, but for counsel's [alleged] errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v Lockhart*, 474 U.S. 52, 59 (1985).  The Court in *Strickland* explained that "[a] reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Strickland,* 466 U.S. at 694.  A district court need not evaluate counsel's performance if any shortcoming would not have mattered.  *See id*. at 697 (stating that, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so," the prejudice prong should be examined before the performance prong "to ensure that ineffectiveness claims do not become so burdensome to defense counsel that the entire criminal justice system suffers as a result"); *see also United States v. McCoy*, 410 F.3d 124, 132 n.6 (3d Cir.2005).

 1. *Claim 1 – Counsel's Purported Failure to Timely File a Notice of Appeal*

A lawyer who disregards specific instructions from a defendant to file a notice of appeal "acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000).  A defendant who instructs counsel to file an appeal "reasonably relies upon counsel to file the necessary notice." *Id*.  An attorney's failure to do so "cannot be considered a strategic decision," since filing a notice of appeal "is a purely ministerial task." *Id.*

Where the defendant neither instructs counsel to file an appeal nor expressly declines to appeal, the relevant inquiry is whether counsel "consulted with the defendant about an appeal." *Id*. at 478.  If counsel consulted with the defendant, counsel performs in a professionally unreasonable manner "only by failing to follow the defendant's express instructions with respect to an appeal." *Id*.  If counsel did not consult his client, the question is "whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Id.*

10

A lawyer has a constitutional duty to consult with the defendant about an appeal "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. In making that determination, courts look to "all the information counsel knew or should have known." *Id.* A "highly relevant factor" is "whether the conviction follows a trial or a guilty plea." *Id.* In cases where the defendant has pleaded guilty, courts consider "whether the defendant received the sentence bargained for as part of the plea," and whether the plea agreement "expressly reserved or waived some or all appeal rights." *Id.* The Supreme Court anticipates that counsel will have a duty to consult with the defendant about an appeal "in the vast majority of cases." *Id.* at 481.

A defendant demonstrates prejudice by showing a reasonable probability that, but for counsel's deficient failure to either file a notice of appeal or consult with him about an appeal, "he would have timely appealed." *Id.* at 484. The defendant need not show he would have prevailed on appeal, or even that his appeal would have had merit. *Id.* at 486. Rather, the defendant need only demonstrate "that, but for counsel's deficient conduct, he would have appealed." *Id.* That same standard applies even where the defendant expressly waived his right to appeal under the terms of a plea agreement. *Garza v. Idaho*, 139 S. Ct. 738, 749-50 (2019) ("the presumption of prejudice recognized in *Flores-Ortega* applies regardless of whether a defendant has signed an appeal waiver"; where an attorney performed deficiently in failing to file a notice of appeal despite the defendant's express instructions to do so, "prejudice is presumed with no further showing from the defendant of the merits of his underlying claims") (quoting *Flores-Ortega*, 528 U.S. at 484).

Here, Mr. Strohm voluntarily waived his right to appeal except under specific, limited circumstances—none of which are present here. After the sentence was imposed, he was advised

of his appellate rights. Specifically, defense counsel stated on the record,

> If you wish to appeal to the appellate court, you have to do so within fourteen days of today by way of written notice. If that's something you wish to do, please notify me within those time periods so I can perfect you—direct your appeal rights and if you no longer are in a position to afford Counsel, you'd be entitled to Counsel to be appointed for you to carry out the direct appeal process.

Sentencing Hearing Tr. at 65. The Defendant acknowledged his appellate rights and replied that he did not have any questions. *Id.*

Defense counsel has submitted a declaration under oath. He credibly represents that Mr. Strohm did not directly or through family instruct him to file an appeal. The question then becomes whether counsel's "failure to consult with the defendant itself constitutes deficient performance." *Flores-Ortega*, 528 U.S. at 478. On the record here, it does not. Mr. Strohm was sentenced within the Guideline range and not even at the top of his Guidelines, and well below the statutory maximum brought to his attention when he entered his pleas. The case was so clear that the Defendant was charged by complaint and warrant and stipulated to probable cause and detention. He was cooperative with the Government, acknowledged responsibility for his crimes, and agreed to plead to an information. Nothing suggested that this individual Defendant, who was expressly advised of his appellate rights, would seek to appeal.

Nor can Defendant establish that but for counsel's deficient conduct, he would have appealed. In fact, when afforded the opportunity to respond *pro se* to the Government's motion for summary affirmance, rather than pursue his claims, Mr. Strohm voluntarily dismissed the appeal. With that factual background, he cannot demonstrate prejudice and his claim rooted in failure to appeal will be dismissed.

2. *Claims 16, 17, and 19 – Counsel's Purported Ineffectiveness at Sentencing*

Claims 16, 17, and 19 allege ineffective assistance of counsel at sentencing. Specifically,

in Claim 16, Defendant argues that counsel was ineffective because the sentence was unreasonable, because the application of an enhancement for use of a computer was improper, and because defense counsel failed to offer mitigating evidence.  In Claim 17, he asserts that counsel was ineffective for failing to object to the prosecutor's statements.  And in Claim 19, he contends that counsel was ineffective for failing to request a hearing on restitution and for failing to object to the term of supervised release.

A district court sentence that reflects a proper application of the Sentencing Guidelines is afforded a presumption of reasonableness.  *Rita v. United States*, 551 U.S. 347 (2007).

> [T]he presumption reflects the fact that, by the time an appeals court is considering a within-Guidelines sentence on review, both the sentencing judge and the Sentencing Commission will have reached the same conclusion as to the proper sentence in a particular case.  That double determination significantly increases the likelihood that the sentence is a reasonable one.

*Id.*  Here, the Court devoted time to the sentencing hearing. Sent. Hearing Tr. 1-66.  It explicitly adopted the pre-sentence report and properly concluded that the Defendant's Guideline range was 151 to 188 months of imprisonment – a Guideline range that was agreed upon in the Defendant's negotiated plea agreement and one to which he lodged no objection in the PSR or at the sentencing hearing.  *Id.* at 5.  The Court reviewed the presentence investigation report, the sentencing memoranda, and the expert reports prepared by the forensic psychologists who were also available by telephone during the hearing.  *Id.*  The Court heard lengthy argument from counsel, and the Defendant was given his right of allocution.  After a consideration of the 3553(a) factors, the Court imposed a within-Guideline sentence of 172 months of imprisonment.  *Id.* at 61.

The sentence is objectively reasonable, and defense counsel did not provide ineffective assistance.  To the extent the Defendant argues that defense counsel failed to offer mitigating evidence, this is contradicted by the record.  Defense counsel retained an expert to conduct a

psychological examination and presented extensive oral argument setting forth the mitigating factors warranting a downward variance including that the Defendant was a hardworking public servant who accepted responsibility for his crimes. Counsel noted that he had the support of his parents, he purportedly suffered from post-traumatic stress disorder for which he sought out mental health treatment, and he had a low likelihood of recidivism. *Id.* at 35, 38, 41, 43, 44.

As to application of enhancements to the offense level, to establish ineffective assistance, a defendant must show that the enhancement was improper. *Jansen v. United States*, 369 F.3d 237, 244 (3d Cir. 2004). That is not the case here, where he indisputably employed a computer in connection with his crimes. *See* U.S.S.G. § 2G2.2(b)(6).

Defendant also summarily argues that counsel was ineffective for failing to object to the prosecutor's statements and for failing to object to the term of supervised release imposed. There is no discernible substance to these arguments. And as to the claim that counsel was ineffective because he failed to request a hearing on restitution, I find that this falls outside the scope of habeas relief.

Mr. Strohm's contention that his sentence was the product of ineffective assistance ignores the many troubling aspects of the record here, which I commented upon at length during sentencing. Sentencing Tr. at 56-62. These include the inconsistency between the opinions of his forensic psychologist and Mr. Strohm's behavior, his demonstrated sexual interest in children, and his posting on the internet pictures of his girlfriend's granddaughter in vulnerable positions that would appeal to pedophiles. In short, it is the facts of the case, not the performance of counsel, that accounts for the sentence here.

> 3. *Claims 2, 3 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 19 – Counsel's Purported Failures in Overall Litigation of the Case*

Mr. Strohm raises several challenges to defense counsel's strategic decisions throughout

the course of his representation, but faces an even heavier burden on these claims because of his guilty plea.

It is firmly established that "a guilty plea represents a break in the chain of events which has preceded it in the criminal process." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Consequently, where a defendant was represented by counsel, he may not, after "solemnly admit[ing] in open court that he is in fact guilty of the offense with which he is charged . . . thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea," *id.*, "through proof that the advice received from counsel was not 'within the range of competence demanded of attorneys in criminal cases.'" *Blackledge v. Perry*, 417 U.S. 21, 30 (1974) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).[3]

Where a plea has been entered, the "focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity." *Tollett*, 411 U.S. at 266. To invoke *Strickland*, Strohm would need to show deficiencies so severe as to undermine the validity of his plea.

Mr. Strohm alleges that defense counsel was ineffective by failing to investigate and litigate the case—contending:

- that counsel failed to establish that Defendant never used police equipment to

---

[3] *See also United States v. Broce*, 488 U.S. 563, 569 (1989) ("A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack."); *Lefkowitz v. Newsome*, 420 U.S. 283, 288 (1975) ("The Brady trilogy announced the general rule that a guilty plea, intelligently and voluntarily made, bars the later assertion of constitutional challenges to the pretrial proceedings.").

receive or distribute child pornography (Claims 2, 3, 6, 11, and 15);

- that counsel was ineffective for failing to discover purported First, Fourth, Fifth, and Fourteenth Amendment violations, and for failing to file a motion to suppress because the search warrant lacked probable cause (Claims 4, 8, 9, and 12); and

- that counsel was ineffective for failing to make certain motions, including for failing to move to dismiss the information and failing to file a Rule 29 motion (Claims 13 and 14), for failing to file a *Daubert* motion (Claim 10), and for failing to make a motion to produce witness statements (Claim 7).

The Government contends that, by unconditionally pleading guilty, Defendant effectively "waived all of these claims" for purposes of both direct appeal and collateral relief, *United States v. Delgado-Garcia*, 374 F.3d 1337, 1341 (D.C. Cir. 2004), and that relief should be denied because a guilty plea "is an admission of all the elements of a formal criminal charge." *McCarthy v. United States*, 394 U.S. 459, 466 (1969). That overstates the case, as the plea agreement specifically preserved collateral attacks based on ineffective assistance of counsel, and in extreme cases a failure on counsel's part could undermine the validity of a plea. But "[t]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument," *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999), and Defendant's arguments here strain credulity.

Claims 2, 3, 6, 11, and 15 have the same factual core: that Mr. Strohm never used a Philadelphia Police Department-issued computer to view or distribute child pornography and that defense counsel's failure to investigate and prove this fact constituted ineffective assistance. But the charges to which he pleaded guilty in no way involved use of public property. The information charged him with distribution and attempted distribution and possession of child pornography,

16

(ECF 11), and his status as a police officer was not an element of the offense, did not result in any enhancements to the offense level, and did not influence the Court at sentencing.  In fact, I specifically commented that I did not attach much significance to his being an officer, but rather placed weight on Mr. Strohm's posting of images of his girlfriend's granddaughter.  Sent. Tr. at 61.  Counsel cannot be faulted for failing to pursue irrelevancies.

Claims 4, 8, 9, and 12 raise a variety of claims that are wholly speculative in nature.  These include allegations that the underlying search warrant lacked probable cause because there was no nexus between the illegal activity and the Defendant's home; that the warrant lacked detail about the images depicting child pornography; that the anonymous tip lacked reliability and did not assert criminal activity; that the warrant was overbroad because Pennsylvania law does not prohibit nude photographs of children; that the warrant failed to allege that the Defendant took photographs of children depicting child pornography; and that he was arrested without a warrant.  Based on these allegations, Strohm alleges ineffective assistance arising out of counsel's failure to file motions to suppress.

Starting with arrest, the docket reflects that a magistrate judge of this Court issued a warrant.  As to the search warrants, they are not part of the record, but the Criminal Complaint is, ECF 1, and specifies in detail the information law enforcement had and the steps it took in determine that the Defendant was involved in child pornography.  And the steps taken represent well-accepted standard practice in cases where online services advise authorities of suspicious online traffic.  The notion that successful motions could have been brought is fanciful.

The remaining claims, 7, 10, 13 and 14, are varied in nature and frivolous. There was no basis on which counsel could have moved to dismiss the information.  As to witness statements, in a typical child pornography case such as this where the incriminating evidence is electronic in

nature, it is hard to conceive of any witness statements that would even exist, let alone have strategic or exculpatory value. Federal Rule of Criminal Procedure Rule 29 has no relevance where a defendant has pleaded guilty. And as to the filing of a *Daubert* motion, it would have been fruitless, as the author of the report submitted by the Government was plainly qualified to offer the opinions that he did.

### III.   CONCLUSION

Mr. Strohm's conviction was inevitable, and he pleaded guilty based upon sound advice from counsel. His disappointment with the sentence – a sentence in the middle of the Guideline range – is not a basis to collaterally attack his plea. His motion for relief under 28 U.S.C. § 2255 will be denied, and there is no basis on which to issue a certificate of appealability.

/s/ Gerald Austin McHugh
United States District Judge